Kimberly Kamel (ISB# 6896)
Sawyer Margett (ISB# 11385)
Hawley Troxell
422 W. Riverside Ave.
Suite 1100
Spokane, WA 99201
kkamel@hawleytroxell.com
smargett@hawleytroxell.com

Binal Patel (*pro hac vice application forthcoming*)
Brian Apel (*pro hac vice application forthcoming*)
Alex Bruening (*pro hac vice application forthcoming*)
Banner & Witcoff, Ltd.
71 S. Wacker Dr., Suite 3600
Chicago, IL 60606
bpatel@bannerwitcoff.com
bapel@bannerwitcoff.com
abruening@bannerwitcoff.com

*Attorneys for Plaintiff Jacobsen Outdoor Group, LLC*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JACOBSEN OUTDOOR GROUP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ROCKY MOUNTAIN HUNTING CALLS & SUPPLIES, LLC, <br><br> Defendant. | Case No. _____ <br><br> **COMPLAINT** |

1

COMES NOW, Plaintiff, Jacobsen Outdoor Group, LLC d/b/a Elk101 and/or Elk101.com ("Elk101"), by and through its counsel of record, and for its complaint against Rocky Mountain Hunting Calls & Supplies, LLC ("RMHC") hereby complains and alleges as follows:

## The Parties

1.      Jacobsen Outdoor Group, LLC ("Elk101") is an Idaho limited liability company with its principal place of business in Donnelly, Valley County, Idaho.

2.      On information and belief, Defendant, Rocky Mountain Hunting Calls & Supplies, LLC ("RMHC") is an Idaho limited liability company, with its principal place of business in Post Falls, Kootenai County, Idaho.

## Jurisdiction and Venue

3.      This is an action for trademark infringement and unfair competition arising under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* ("Lanham Act"), Idaho Statute § 48-603, federal common law, and the common law of the state of Idaho; for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*; and for breach of contract, quasi-contract/unjust enrichment, and tortious interference arising under the laws of the state of Idaho.

4.      This Court has subject matter jurisdiction over this action pursuant to at least 28 U.S.C. §§ 1331, 1338(a), 1367, 2201, 2202 as well as 15 U.S.C. § 1121(a).

5.      This Court has general personal jurisdiction over RMHC at least because RMHC resides in this district.

6.      This Court has specific personal jurisdiction over RMHC based upon its contacts with this forum, including at least regularly and intentionally doing business in this District and committing acts giving rise to this lawsuit in this District.

7.      Venue is proper in this District pursuant to at least 28 U.S.C. § 1391 at least because RMHC resides in this District.

**General Factual Allegations**

8.    Plaintiff Jacobsen Outdoor Group, LLC ("Elk101") was founded by Corey Jacobsen ("Mr. Jacobsen") in 2004.

9.    In 2008, Mr. Jacobsen was approached by a manager at a Cabela's store in Boise, Idaho, to provide in-store training on elk hunting. Mr. Jacobson agreed, and the in-store training was a huge success. Attendees provided comments and asked questions before and after the training. Due to the sheer number of them, Mr. Jacobsen created blog posts responding to these comments and answering these questions.

10.    Since at least 2009, Elk101 and/or Elk101.com has been an assumed business name of Jacobsen Outdoor Group, LLC.

11.    The website www.elk101.com was launched in 2009, and has been publicly accessible since then. Elk101 quickly gained a reputation in the elk hunting community as being a trusted, reliable resource of information, goods, and services.

12.    After 2009, sales of gear on the Elk101 website grew substantially. Elk101 then began generating advertising revenue from the Elk101 website. Elk101 was discerning in deciding who was permitted to advertise on Elk101's website, further enhancing Elk101's reputation in the elk hunting community.

13.    Elk101's website hosts some of the most active and engaging elk hunting forums and chat rooms online. In its first 5 years, the Elk101 website grew to generating over 5 million page views annually. In 2016, total pageviews increased to over 7 million. And in 2017, pageviews surpassed 9 million.

14.    From 2011 to 2015, Elk101 published a physical magazine, Extreme Elk Magazine. This was another platform to share elk hunting content, including stories and tactical articles, generate advertiser revenue, as well as to increase consumer recognition of the Elk101 brand.

61550.0001.15530473.1

15.     In 2015, Elk101 began developing "The University of Elk Hunting" online course, which provides educational and instructional services related to elk calling and hunting. Elk101 created the curriculum, wrote the copy for each chapter, produced the images for each chapter, and created the video components used in each chapter. The course was first offered in June 2016.

16.     Through November 2022, nearly 27,000 unique users have signed up for a membership to "The University of Elk Hunting" online course, with over 54,000 orders being placed.

17.     Elk101's "The University of Elk Hunting" online course is considered to be the most comprehensive resource for elk hunters.

18.     Since 2018, Elk101 has created and hosted a podcast series called "Elk Talk," episodes of which are routinely heard by tens of thousands of listeners.

19.     Elk101 is highly prominent on social media. Elk101's Instagram account has ~179,000 followers. Elk101's YouTube channel has ~124,000 subscribers. Elk101's Facebook page has ~100,000 likes and ~99,000 followers.

20.     The Elk101 YouTube channel has generated over 21 million views and over 5 million hours of viewing. Some of Elk101's YouTube videos have more than 1.5 million views.

21.     Since 2018, Elk101 has created an annual YouTube video series called "Destination Elk" showcasing elk hunting, episodes of which routinely receive tens of thousands of views, and many of which receive hundreds of thousands of views.

### Elk101's Trademarks

22.     Elk101 owns common law rights in numerous trademarks based on Elk101's use of these trademarks in commerce in connection with elk calls, camping and hunting equipment

61550.0001.15530473.1

and gear, camping and hunting services, and hunting education services throughout the United States and including in the state of Idaho.

23.    Elk101 has used the mark ELK101 in commerce since at least 2009 in connection with elk calls, camping and hunting equipment and gear, camping and hunting services, and hunting education services.

24.    In 2009, Elk101 began publishing elk hunting content online using the ELK101 trademark, including articles and videos. That year, Elk101 also added an online store and began selling hunting gear using the ELK101 trademark. Elk101 also sold t-shirts and decals bearing the ELK101 mark.

25.    Elk101 has used the mark ELK101 SIGNATURE SERIES in commerce since at least 2011 in connection with elk calls.

26.    Elk101 has used the mark ELK101 ALL-STAR in commerce since at least January 2011 in connection with diaphragm elk calls.

27.    Mr. Jacobsen used the ELK101 ALL-STAR diaphragm to win the 2011 Rocky Mountain Elk Foundation's World Elk Calling Championships in Reno, Nevada. ELK101 ALL-STAR diaphragm elk calls are part of the ELK101 SIGNATURE SERIES product line.

28.    Elk101 has used the mark ELK101 TEMPTRESS in commerce since at least 2011 in connection with open-reed cow elk calls. ELK101 TEMPTRESS open-reed cow elk calls are part of the ELK101 SIGNATURE SERIES product line.

29.    Elk101 has used the mark ELK101 BULLY BULL and ELK101 BULLY BULL EXTREME in commerce since at least 2013 in connection with grunt tube elk calls. ELK101 BULLY BULL and ELK101 BULLY BULL EXTREME grunt tube elk calls are part of the ELK101 SIGNATURE SERIES product line.

61550.0001.15530473.1

30.    Elk101 has used the mark ELK101 CONTENDER in commerce since at least 2017 in connection with diaphragm elk calls.

31.    Elk101 has used the mark ELK101 CHAMP in commerce since at least 2019 in connection with diaphragm elk calls.

32.    Elk101 has used the stylized "ELK101" with "ELK101" next to an elk head profile (the "Elk101 Design Mark") in commerce since at least 2013 in connection with Elk101's goods and services. Examples of the Elk101 Design Mark are shown below.

Examples of the Elk101 Design Mark

 

33.    The Elk101 Design Mark has been displayed on the website www.elk101.com since at least January 2013.

34.    Elk101 owns all right, title, and interest in the ELK101, ELK101 SIGNATURE SERIES, ELK101 ALL-STAR, ELK101 TEMPTRESS, ELK101 BULLY BULL, ELK101 BULLY BULL EXTREME, ELK101 CONTENDER, and ELK101 CHAMP marks, as well as the Elk101 Design Mark (collectively "Elk101's Trademarks").

35.    All of Elk101's marketing and advertising is done in connection with Elk101's Trademarks. For example, since 2009, Elk101 has promoted the ELK101 SIGNATURE SERIES line of products, which bear Elk101's Trademarks, through numerous platforms, including:

- in Extreme Elk Magazine, which was published by Elk101 from 2011 to 2015;

- at over 30 trade shows from 2011 to 2016;

61550.0001.15530473.1

- in The University of Elk Hunting online course;

- in the annual elk hunting docuseries, Destination Elk;

- at the World Elk Calling Championships;

- by Mr. Jacobsen, the most decorated winner in the history of the World Elk Calling Championships;

- to an email subscriber list of over 100,000 email addresses;

- on Elk101's Instagram account, which has ~179,000 followers;

- on Elk101's YouTube channel, which has ~124,000 subscribers;

- on Elk101's Facebook page, which has ~99,000 followers;

- on Mr. Jacobsen's Instagram account, which has ~94,500 followers;

- on Mr. Jacobsen's Facebook page, which has ~21,000 followers; and

- on the Elk Talk Podcast.

36.     Additionally, other prominent people in the hunting industry use products bearing Elk101's Trademarks, including Randy Newberg, Remi Warren, Jason Matzinger, and several competitors in the annual World Elk Calling Championships.

37.     Elk101's marketing and advertising has resulted in substantial sales, including by RMHC.

38.     Elk101 vigilantly protects it trademarks, and Elk101 ensures that products and services that bear, and are associated with, Elk101's Trademarks satisfy Elk101's high quality and performance standards.

39.     As a result of, *inter alia*, the exclusive, continuous and substantial use of Elk101's Trademarks by Elk101, the exclusive, continuous, and substantial advertisement and promotion of products bearing Elk101's Trademarks, and the publicity and attention that has been paid to

7

Elk101's Trademarks, Elk101's Trademarks have acquired valuable goodwill and secondary meaning in the marketplace, as consumers have come to uniquely associate Elk101's Trademarks as a source identifier of Elk101's business and Elk101's products.

<strong><u>Elk101's Royalty Agreement with RMHC</u></strong>

40.     In 2010, with the popularity of Elk101 growing rapidly, RMHC approached Elk101 about the possibility of creating an Elk101-branded diaphragm elk call that could be promoted on both RMHC and Elk101's platforms. This diaphragm elk call became the ELK101 ALL-STAR diaphragm elk call.

41.     In 2010, RMHC and Elk101 entered into an oral agreement regarding Elk101's Trademarks (the "Royalty Agreement"). Specifically, Elk101 and RMHC agreed that (i) RMHC would have a license to distribute and sell goods bearing certain Elk101 Trademarks, and, in return, (ii) RMHC would pay a 10 percent (10%) royalty on all products bearing one or more of Elk101's Trademarks.

42.     The Royalty Agreement contained no express terms regarding duration or termination.

43.     Starting in Q1 of 2011, RMHC began making quarterly royalty payments pursuant to the Royalty Agreement. From 2011 through 2021, RMHC's royalty payments steadily increased.

44.     In or around January 2012, RMHC hired Mr. Kurt Howard. Mr. Howard became RMHC's General Manager a few years later.

45.     In June 2019, RMHC was sold to Mr. Dale Ames. Mr. Howard subsequently acquired an ownership interest in RMHC. In June 2019, Mr. Howard informed Elk101 that RMHC intended to continue to sell products bearing one or more of Elk101's Trademarks, and that RMHC

61550.0001.15530473.1

intended to continue to make quarterly royalty payments to Elk101 pursuant to the terms of the Royalty Agreement.

46.    After the June 2019 acquisition of RMHC, RMHC continued to sell products bearing one or more of Elk101's Trademarks, and RMHC continued to make quarterly payments to Elk101.

47.    On information and belief, RMHC has generated millions of dollars in revenue from its sales of products bearing one or more of Elk101's Trademarks.

48.    Since 2011, Elk101 has received substantial royalty payments from RMHC.

**Elk101's Advertising Agreement with RMHC**

49.    Before 2018, RMHC and Elk101 entered into an agreement whereby, in exchange for monetary compensation paid to Elk101 by RMHC, Elk101 would provide RMHC with sponsorship, marketing, and advertising services, including by placing ads for RMHC on Elk101's website ("the Advertising Agreement").

50.    In 2018, RMHC and Elk101 agreed to revise the terms of the Advertising Agreement. Specifically, RMHC and Elk101 agreed that, instead of RMHC providing Elk101 with monetary compensation for Elk101's services, RMHC would provide Elk101 with compensation in the form of products bearing one or more of Elk101's Trademarks.

51.    RMHC and Elk101 substantially performed under the Advertising Agreement. Specifically, since 2018, Elk101 has provided RMHC with the agreed-to sponsorship, marketing, and advertising services, including by placing ads for RMHC on Elk101's website; and RMHC has provided Elk101 with the agreed-to products as compensation.

**Development of Non-Call Products**

52.    Beginning in or around October 2020, Elk101 and RMHC began developing a bow hook, a bugle tube holder, and a game bag ("Non-Call Products").

61550.0001.15530473.1

53.     Elk101 and RMHC agreed that RMHC would pay Elk101 per-unit royalties on the Non-Call Products equivalent to at least 10 percent of gross sales of the Non-Call Products, if the Non-Call Products bore one or more of Elk101's Trademarks.

54.     From October 2020 to late 2021, Elk101 and RMHC continued to develop the Non-Call Products. Elk101 created and sent to RMHC drawings of the Non-Call Products.

55.     In January 2022, RMHC fired Mr. Howard, who had been Elk101's primary point of contact at RMHC. Nevertheless, from January 2022 to November 2022, Elk101 continued to work with RMHC on development and manufacture of the Non-Call Products.

56.     Development and manufacture of the Non-Call Products was unsatisfactory to Elk101 due to production and quality issues.

**RMHC's Breach of the Royalty Agreement and Infringement of the Elk101's Trademarks**

57.     In May 2022, RMHC made a payment to Elk101, which RMHC represented was RMHC's quarterly royalty payment to Elk101 for RMHC's Q1 2022 sales, pursuant to the Royalty Agreement. This payment, however, was over 80 percent lower than the Q1 2021 royalty payment from RMHC to Elk101.

58.     On information and belief, the amount of RMHC's May 2022 payment to Elk101 was substantially less than the amount owed to Elk101 under the terms of the Royalty Agreement.

59.     In July 2022, RMHC made a payment to Elk101, which RMHC represented was RMHC's quarterly royalty payment to Elk101 for RMHC's Q2 2022 sales, pursuant to the Royalty Agreement. This payment, however, was over 60 percent lower than the Q2 2021 royalty payment from RMHC to Elk101.

60.     On information and belief, the amount of RMHC's July 2022 payment to Elk101 was substantially less than the amount owed to Elk101 under the terms of the Royalty Agreement.

61550.0001.15530473.1

61.     In May 2022, and again in July 2022, Elk101 expressed surprise and concern to RMHC about the decreased royalty payments. In July 2022, Elk101 asked RMHC for an accounting of RMHC's sales of products bearing one or more of Elk101's Trademarks, including an accounting of RMHC's accounts receivable. RMHC did not provide Elk101 the requested accounting information.

62.     On information and belief, RMHC has not paid Elk101 the entire amount of royalties owed to Elk101 for RMHC's sales of products bearing one or more of Elk101's Trademarks, under the terms of the Royalty Agreement.

63.     On November 19, 2022, Elk101 emailed RMHC. In this email, Elk101 (i) notified RMHC that the Royalty Agreement, including RMHC's license of Elk101's Trademarks, would be terminated effective December 31, 2022; (ii) demanded that RMHC cease, by December 31, 2022, all sales of any product bearing one or more of Elk101's Trademarks; and (iii) informed RMHC that Elk101 would be realigning the Elk101 brand, including products that will bear one or more of Elk101's Trademarks, with a manufacturer other than RMHC.

64.     As of January 1, 2023, RMHC began infringing Elk101's Trademarks by intentionally continuing to sell and offer for sale products bearing one or more of Elk101's Trademarks without Elk101's authorization, permission, or consent, and without a license from Elk101.

65.     For example, RMHC intentionally continues to sell and offer for sale products bearing one or more of Elk101's Trademarks without Elk101's authorization, permission, or consent, and without a license via RMHC's 2023 product catalog.

66.     As another example, RMHC intentionally sold and offered for sale products bearing one or more of Elk101's Trademarks without Elk101's authorization, permission, or consent, and

61550.0001.15530473.1

without a license at the January 2023 Archery Trade Association trade show in Indianapolis, Indiana.

67.    As another example, as shown below, on RMHC's website, RMHC intentionally continues to sell and offer for sale products bearing one or more of Elk101's Trademarks without Elk101's authorization, permission, or consent, and without a license from Elk101.



**Excerpt from RMHC's website after January 1, 2023, showing RMHC's unauthorized use of one or more of Elk101's Trademarks**

61550.0001.15530473.1



**Excerpt from RMHC's website after January 1, 2023, showing RMHC's unauthorized use of one or more of Elk101's Trademarks**



**Excerpt from RMHC's website after January 1, 2023, showing RMHC's unauthorized use of one or more of Elk101's Trademarks**

13



**Excerpt from RMHC's website after January 1, 2023, showing RMHC's unauthorized use of one or more of Elk101's Trademarks**



**Excerpt from RMHC's website after January 1, 2023, showing RMHC's unauthorized use of one or more of Elk101's Trademarks**

14



**Excerpt from RMHC's website after January 1, 2023, showing RMHC's unauthorized use of one or more of Elk101's Trademarks**



**Excerpt from RMHC's website after January 1, 2023, showing RMHC's unauthorized use of one or more of Elk101's Trademarks**

61550.0001.15530473.1



**Excerpt from RMHC's website after January 1, 2023, showing RMHC's unauthorized use of one or more of Elk101's Trademarks**

68.    As another example, as shown below, RMHC intentionally continues to sell and offer for sale products bearing one or more of Elk101's Trademarks without Elk101's authorization, permission, or consent, and without a license from Elk101 via third parties, such as Amazon.



**Excerpt from Amazon's website after January 1, 2023, showing RMHC's unauthorized use of one or more of Elk101's Trademarks**

16



**Excerpt from Amazon's website after January 1, 2023, showing RMHC's unauthorized use
of one or more of Elk101's Trademarks**



**Excerpt from Amazon's website after January 1, 2023, showing RMHC's unauthorized use
of one or more of Elk101's Trademarks**

69.    Elk101 has attempted to partner with other manufacturers of elk calls and related
goods for the manufacture and sale of products that would bear one or more of Elk101's
Trademarks. However, other manufacturers refuse to partner with Elk101 while RMHC continues
to intentionally infringe Elk101's Trademarks by intentionally continuing to sell and offer for sale
products bearing one or more of Elk101's Trademarks without Elk101's authorization, permission,
consent, and without a license.

61550.0001.15530473.1

70.     On or about January 13, 2023, Elk101 notified RMHC that RMHC's infringement of Elk101's Trademarks was preventing Elk101 from moving forward on new ventures, and that RMHC's infringement of Elk101's Trademarks was causing Elk101 irreparable harm to Elk101.

71.     On or about January 30, 2023, Elk101 again notified RMHC that it was continuing to infringe Elk101's Trademarks, and Elk101 specifically enumerated (e.g., by providing specific website URLs) how RMHC was infringing Elk101's Trademarks.

### RMHC's Legal Proceedings in Idaho State Court

72.     In February 2023, RMHC filed a civil action in Idaho state court against Mr. Jacobsen personally, asserting claims for trade-secret misappropriation and breach of contract ("the Idaho Action").

73.     In the Idaho Action, RMHC does not identify what specifically is supposedly a trade secret, alleging only that it supplied Mr. Jacobsen with "RMHC products, trade secrets, logos, and intellectual property, including film, pictures, and processes of manufacturing."

74.     In the Idaho Action, RMHC does not explain or even state how, when, or where Mr. Jacobsen allegedly misappropriated RMHC's alleged trade secret, alleging only that Mr. Jacobsen "continues to use … RMHC's … trade secrets."

75.     RMHC never supplied—and RMHC knows that it never supplied—Mr. Jacobsen with any information that derives independent economic value, actual or potential, from not being generally known.

76.     There was never—and RMHC knows there was never—a written confidentiality agreement between RMHC and Mr. Jacobsen.

77.     In the Idaho Action, RMHC alleges that multiple "written agreements" existed between RMHC and Mr. Jacobsen. RMHC did not append to its complaint any copy of any such alleged written agreement.

18

78.    There was never—and RMHC knows there was never—any written agreement between RMHC and Mr. Jacobsen.

79.    In the Idaho Action, RMHC alleges that it made an offer to Mr. Jacobsen, and that RMHC's offer included a request that Mr. Jacobsen return to RMHC "all products, trade secrets, logos, and intellectual property."

80.    There was never—and RMHC knows there was never—any agreement between RMHC and Mr. Jacobsen related to return of "products, trade secrets, logos, and intellectual property" to RMHC.

81.    All products in Elk101's possession that bear one or more of Elk101's Trademarks were—and RMHC knows that they were—provided to Elk101 as compensation pursuant to the Advertising Agreement.

82.    Elk101 owns all right, title, and interest in all products in Elk101's possession that bear one or more of Elk101's Trademarks.

83.    On information and belief, RMHC brought the Idaho Action against Mr. Jacobsen personally, instead of against Elk101, for the purpose of trying to intimidate Mr. Jacobsen into believing that Mr. Jacobsen could be personally liable to RMHC.

84.    On information and belief, RMHC brought the Idaho Action against Mr. Jacobsen for the purpose of interfering with Elk101's prospective partnership(s) with other manufacturers of elk calls and related goods.

85.    On information and belief, RMHC brought the Idaho Action against Mr. Jacobsen in bad faith, and with the knowledge that Elk101 is attempting to partner with other manufacturers of elk calls and related goods for the manufacture and sale of products that would bear one or more of Elk101's Trademarks.

61550.0001.15530473.1

## COUNT I
## Trademark Infringement (15 U.S.C. § 1125)

86.    Elk101 realleges and incorporates the allegations set forth in paragraphs 1 through 85 as though fully set forth herein.

87.    Elk101's Trademarks are valid and are entitled to protection under federal law. Elk101's Trademarks are inherently distinctive. Elk101 has extensively and continuously promoted and used Elk101's Trademarks for years in the United States. Through that extensive and continuous use, Elk101's Trademarks have become a well-known indicator of the origin and quality of Elk101's products. Elk101's Trademarks have also acquired secondary meaning in the marketplace. Moreover, Elk101's Trademarks acquired this secondary meaning before RMHC commenced its unlawful use of Elk101's Trademarks on January 1, 2023.

88.    As of January 1, 2023, RMHC did not have authorization, permission, consent, or a license from Elk101 to use in commerce any of Elk101's Trademarks.

89.    As of January 1, 2023, RMHC did not have authorization, permission, consent, or a license from Elk101 to make, use, sell, offer for sale, or import into the United States any good, service, product, container, or packaging bearing any of Elk101's Trademarks.

90.    As of January 1, 2023, RMHC, in connection with goods or services, and/or containers for goods, has used and is using in commerce one or more of Elk101's Trademarks, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of RMHC with Elk101, or as to the origin, sponsorship, or approval of RMHC's goods, services, or commercial activities by Elk101.

91.    Based on the activities described above, including, for example, RMHC's unauthorized use of Elk101's Trademarks and/or colorable imitations thereof, RMHC's actions constitute common law trademark infringement under § 43(a) of the Lanham Act, at least because

61550.0001.15530473.1

RMHC's unauthorized use of Elk101's Trademarks and/or colorable imitations thereof in the United States, including the state of Idaho, is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of RMHC with Elk101 and as to the origin, sponsorship, and/or approval of RMHC's products bearing one or more of Elk101's Trademarks, at least by creating the false and misleading impression that these products are authorized by Elk101.

92.     RMHC's unlawful use of one or more of Elk101's Trademarks have directly and proximately harmed Elk101, including by causing lost business opportunities to Elk101.

93.     RMHC's unauthorized use of Elk101's Trademarks and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Elk101 for which Elk101 has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Elk101's Trademarks, Elk101's products, and Elk101.

94.     RMHC's unauthorized use of Elk101's Trademarks and/or colorable imitations thereof has been intentional, willful, and malicious. RMHC's bad faith is evidenced at least by the example facts described above, including RMHC's continued sale of products bearing one or more of Elk101's Trademarks after Elk101 provided an express, written demand to RMHC to cease and desist from using Elk101's Trademarks.

95.     Elk101 is entitled to damages, injunctive relief, and an award of its reasonable costs and attorney fees.

## COUNT II
## Unfair Competition (15 U.S.C. § 1125)

96.     Elk101 realleges and incorporates the allegations set forth in paragraphs 1 through 95 as though fully set forth herein.

21

61550.0001.15530473.1

97.     Elk101's Trademarks are valid and are entitled to protection under federal law. Elk101's Trademarks are inherently distinctive. Elk101 has extensively and continuously promoted and used Elk101's Trademarks for years in the United States. Through that extensive and continuous use, Elk101's Trademarks have become a well-known indicator of the origin and quality of Elk101's products. Elk101's Trademarks have also acquired secondary meaning in the marketplace. Moreover, Elk101's Trademarks acquired this secondary meaning before RMHC commenced its unlawful use of Elk101's Trademarks on January 1, 2023.

98.     As of January 1, 2023, RMHC did not have authorization, permission, consent, or a license from Elk101 to use in commerce any of Elk101's Trademarks.

99.     As of January 1, 2023, RMHC did not have authorization, permission, consent, or a license from Elk101 to make, use, sell, offer for sale, or import into the United States any good, service, product, container, or packaging bearing any of Elk101's Trademarks.

100.    As of January 1, 2023, RMHC, in connection with goods or services, and/or containers for goods, has used and is using in commerce one or more of Elk101's Trademarks, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of RMHC with Elk101, or as to the origin, sponsorship, or approval of RMHC's goods, services, or commercial activities by Elk101.

101.    Based on the activities described above as of January 1, 2023, including, for example, RMHC's unauthorized use of Elk101's Trademarks and/or colorable imitations thereof, and RMHC's false claims that Elk101 approves, authorizes, sponsors, or supports RMHC's unauthorized use of Elk101's Trademarks, RMHC violates § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and such actions constitute unfair competition and false designation of origin and false advertising, at least because RMHC has obtained an unfair advantage as compared to Elk101

61550.0001.15530473.1

through RMHC's use of Elk101's Trademarks, because such use is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association between RMHC and Elk101, because such use of Elk101's Trademarks is likely to cause consumer confusion as to the origin, sponsorship, and/or affiliation of RMHC's products, at least by creating the false and misleading impression that its products are manufactured by, authorized by, or otherwise associated with Elk101, constituted false commercial advertising and/or promotion that misrepresented the nature, characteristics, and qualities of RMHC's products and/or commercial activities and was likely to deceive the consuming public in a material manner, to the detriment of Elk101.

102.    RMHC's unlawful use of one or more of Elk101's Trademarks have directly and proximately harmed Elk101, including lost business opportunities to Elk101.

103.    RMHC's unauthorized use of Elk101's Trademarks and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Elk101 for which Elk101 has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Elk101's Trademarks, Elk101's products, and Elk101.

## COUNT III
## Trademark Infringement (Idaho Common Law)

104.    Elk101 realleges and incorporates the allegations set forth in paragraphs 1 through 103 as though fully set forth herein.

105.    Elk101's Trademarks are valid and are entitled to protection under Idaho law. Elk101's Trademarks are inherently distinctive. Elk101 has extensively and continuously promoted and used Elk101's Trademarks for years in the United States, including in the state of Idaho. Through that extensive and continuous use, Elk101's Trademarks have become a well-

61550.0001.15530473.1

known indicator of the origin and quality of Elk101's products. Elk101's Trademarks have also acquired secondary meaning in the marketplace. Moreover, Elk101's Trademarks acquired this secondary meaning before RMHC commenced its unlawful use of Elk101's Trademarks on January 1, 2023.

106.   As of January 1, 2023, RMHC did not have authorization, permission, consent, or a license from Elk101 to use in commerce any of Elk101's Trademarks.

107.   As of January 1, 2023, RMHC did not have authorization, permission, consent, or a license from Elk101 to make, use, sell, or offer for sale any good, service, product, container, or packaging bearing any of Elk101's Trademarks.

108.   As of January 1, 2023, RMHC, in connection with goods or services, and/or containers for goods, has used and is using in commerce one or more of Elk101's Trademarks, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of RMHC with Elk101, or as to the origin, sponsorship, or approval of RMHC's goods, services, or commercial activities by Elk101.

109.   Based on the activities described above, including, for example, RMHC's unauthorized use of Elk101's Trademarks and/or colorable imitations thereof, RMHC's actions constitute common law trademark infringement, at least because RMHC's unauthorized use of Elk101's Trademarks and/or colorable imitations thereof in the United States, including the state of Idaho, is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of RMHC with Elk101 and as to the origin, sponsorship, and/or approval of RMHC's products bearing one or more of Elk101's Trademarks, at least by creating the false and misleading impression that these products are authorized by Elk101.

61550.0001.15530473.1

110.    RMHC's unlawful use of one or more of Elk101's Trademarks have directly and proximately harmed Elk101, including lost business opportunities to Elk101.

111.    RMHC's unauthorized use of Elk101's Trademarks and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Elk101 for which Elk101 has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Elk101's Trademarks, Elk101's products, and Elk101.

112.    RMHC's unauthorized use of Elk101's Trademarks and/or colorable imitations thereof has been intentional, willful, and malicious. RMHC's bad faith is evidenced at least by the example facts described above, including RMHC's continued sale of products bearing one or more of Elk101's Trademarks after Elk101 provided an express, written demand to RMHC to cease and desist from using Elk101's Trademarks.

113.    Elk101 is entitled to damages, injunctive relief, and an award of its reasonable costs and attorney fees.

## COUNT IV
## Unfair Competition (Idaho Statute § 48-603)

114.    Elk101 realleges and incorporates the allegations set forth in paragraphs 1 through 113 as though fully set forth herein.

115.    Elk101's Trademarks are valid and are entitled to protection under Idaho law. Elk101's Trademarks are inherently distinctive. Elk101 has extensively and continuously promoted and used Elk101's Trademarks for years in the United States. Through that extensive and continuous use, Elk101's Trademarks have become a well-known indicator of the origin and quality of Elk101's products. Elk101's Trademarks have also acquired secondary meaning in the

61550.0001.15530473.1

marketplace. Moreover, Elk101's Trademarks acquired this secondary meaning before RMHC commenced its unlawful use of Elk101's Trademarks on January 1, 2023.

116.    As of January 1, 2023, RMHC did not have authorization, permission, consent, or a license from Elk101 to use in commerce any of Elk101's Trademarks.

117.    As of January 1, 2023, RMHC has represented and is representing that goods or services bearing one or more of Elk101's Trademarks have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that RMHC has a sponsorship, approval, status, affiliation, connection, qualifications or license with Elk101 that RMHC does not have.

118.    As of January 1, 2023, RMHC has engaged in and is engaging in acts or practices that are misleading, false, or deceptive to the consumer, for example, by continuing to offer for sale and sell goods that bear one or more of Elk101's Trademarks without authorization, permission, consent, or a license from Elk101.

119.    As of January 1, 2023, RMHC, in connection with goods or services, and/or containers for goods, has used and is using in commerce one or more of Elk101's Trademarks, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of RMHC with Elk101, or as to the origin, sponsorship, or approval of RMHC's goods, services, or commercial activities by Elk101.

120.    Based on the activities described above as of January 1, 2023, including, for example, RMHC's unauthorized use of Elk101's Trademarks and/or colorable imitations thereof, and RMHC's false claims that Elk101 approves, authorizes, sponsors, or supports RMHC's unauthorized use of Elk101's Trademarks, RMHC violates Idaho Statute § 48-603 and such actions constitute unfair competition.

61550.0001.15530473.1

121.    RMHC's unlawful use of one or more of Elk101's Trademarks have directly and proximately harmed Elk101, including lost business opportunities to Elk101.

122.    RMHC's unauthorized use of Elk101's Trademarks and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Elk101 for which Elk101 has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Elk101's Trademarks, Elk101's products, and Elk101.

## COUNT V
## Declaratory Judgment

123.    Elk101 realleges and incorporates the allegations set forth in paragraphs 1 through 122 as though fully set forth herein.

124.    On February 17, 2023, RMHC filed U.S. Trademark Application Serial No. 97800736 for the word mark "ELK101" for game calls and hunting game calls ("the '736 Application").

125.    In the '736 Application, RMHC told the U.S. Patent & Trademark Office that RMHC first used the ELK101 mark in commerce at least as early as 2014.

126.    In the '736 Application, RMHC's President, Dale Ames, declared to the U.S. Patent & Trademark Office under penalty of fine or imprisonment or both, that RMHC is the owner of the ELK101 mark, and/or that RMHC is entitled to use the ELK101 mark in commerce.

127.    In the '736 Application, RMHC's President, Dale Ames, declared to the U.S. Patent & Trademark Office under penalty of fine or imprisonment or both, that no other persons have the right to use the ELK101 mark in commerce.

128.    Contrary to RMHC's statement to the U.S. Patent & Trademark Office, RMHC was not the first to use the ELK101 mark in commerce in 2014.

27

129.    Contrary to RMHC's and Mr. Ames's statements and declarations to the U.S. Patent & Trademark Office, RMHC is not the owner of the ELK101 mark, and RMHC is not entitled to use the ELK101 mark in commerce.

130.    As a result of the acts described in the foregoing paragraphs, there exists an actual and justiciable controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment in favor of Elk101 and against RMHC.

131.    Elk101 first used the ELK101 mark in commerce at least as early as 2011.

132.    Elk101 is the senior user of the ELK101 mark in the '736 Application.

133.    RMHC has no ownership rights in the mark applied for in the '736 Application.

134.    RMHC has no ownership rights in any of the Elk101 Trademarks.

135.    RMHC is not entitled to use in commerce the mark applied for in the '736 Application.

136.    RMHC is not entitled to use in commerce any of the Elk101 Trademarks.

137.    Elk101 is entitled to a declaratory judgment that (i) Elk101 first used the ELK101 mark in commerce at least as early as 2011; and that (ii), Elk101 is the senior user of the ELK101 mark in the '736 Application.

138.    Elk101 is entitled to a declaratory judgment that RMHC (i) has no ownership rights in the mark applied for in the '736 Application; (ii) has no ownership rights in any of the Elk101 Trademarks; (iii) is not entitled to use in commerce the mark applied for in the '736 Application; and (iv) is not entitled to use in commerce any of the Elk101 Trademarks.

139.    Pursuant to at least one or more of 15 U.S.C. §§ 1116, 1119, 1121(b); 28 U.S.C. §§ 2201, 2202; Federal Rule of Civil Procedure 65; and the Court's inherent powers, Elk101 is entitled to injunctive relief including but not limited to (i) an order directing the Director of the

61550.0001.15530473.1

U.S. Patent & Trademark Office to cancel and/or refuse to grant RMHC any and all trademarks and/or trademarks applications for the '736 Application, for ELK101, and for any of the Elk101 Trademarks; and (ii) an order directing RMHC to withdraw and/or cancel the '736 Application, and to permanently refrain from filing any trademark applications for ELK101, for any of the Elk101 Trademarks, or for any confusingly similar mark.

## COUNT VI
### Breach of Contract

140.    Elk101 realleges and incorporates the allegations set forth in paragraphs 1 through 139 as though fully set forth herein.

141.    RMHC and Elk101 entered into a valid, enforceable contract in which the parties agreed that (i) RMHC would have a license from Elk101 to distribute and sell goods bearing one or more of Elk101's Trademarks, and (ii) RMHC would pay Elk101 a royalty on all products bearing one or more of Elk101's Trademarks.

142.    From 2011 through Q4 2022, RMHC made quarterly payments to Elk101.

143.    RMHC breached the Royalty Agreement, at least starting in 2022, by failing to pay the entire amounts owed to Elk101 pursuant to the terms of the agreement.

144.    Elk101 is entitled to damages for RMHC's breach, including damages equal to at least the balance of the amounts owed but unpaid.

## COUNT VII
### Quasi-Contract / Unjust Enrichment

145.    Elk101 realleges and incorporates the allegations set forth in paragraphs 1 through 144 as though fully set forth herein.

146.    Elk101 conferred a benefit on RMHC, including a license by Elk101, up until December 31, 2022, for RMHC to distribute and sell goods bearing one or more of Elk101's Trademarks.

61550.0001.15530473.1

147.    RMHC accepted the benefit provided by Elk101, at least by distributing and selling goods bearing one or more of Elk101's Trademarks, which caused RMHC to make a profit.

148.    Under the circumstances, it would be unjust and inequitable for RMHC to retain the benefit conferred by Elk101 on RMHC without payment to Elk101 for the value thereof.

149.    Elk101 is entitled to damages for RMHC's unjust enrichment, including damages equal to at least RMHC's profits on products sold on or after January 1, 2023, and bearing one or more of Elk101's Trademarks.

## COUNT VIII
## Tortious Interference With Prospective Economic Advantage

150.    Elk101 realleges and incorporates the allegations set forth in paragraphs 1 through 149 as though fully set forth herein.

151.    Elk101 had a valid economic expectancy that, after December 31, 2022, Elk101 would partner with a manufacturer other than RMHC.

152.    RMHC had knowledge of this expectancy. On November 19, 2022, Elk101 demanded in writing that RMHC cease, by December 31, 2022, all sales of any product bearing one or more of Elk101's Trademarks. Also on November 19, 2022, Elk101 informed RMHC in writing that Elk101 would be realigning Elk101's Trademarks and brand, including products that will bear one or more of Elk101's Trademarks, with a manufacturer other than RMHC.

153.    RMHC is intentionally interfering, and has intentionally interfered, with Elk101's economic expectancy. On November 19, 2022, Elk101 demanded in writing that RMHC cease, by December 31, 2022, all sales of any product bearing one or more of Elk101's Trademarks. Also on November 19, 2022, Elk101 informed RMHC in writing that Elk101 would be realigning Elk101's Trademarks and brand, including products that will bear one or more of Elk101's Trademarks, with a manufacturer other than RMHC. After December 31, 2022, RMHC

61550.0001.15530473.1

intentionally continued to sell and offer for sale products bearing one or more of Elk101's Trademarks, but without authorization, permission, consent, or a license from Elk101.

154.    RMHC's interference is, and has been wrongful, at least because RMHC's sales and offers for sale of products bearing one or more of Elk101's Trademarks after January 1, 2023 has been in violation of federal and state trademark and unfair competition laws.

155.    Elk101's economic expectancy has been disrupted as a direct and proximate result of RMHC's wrongful inference. Elk101 has been unable to secure partnerships with other distributors and manufacturers of products bearing one or more of Elk101's Trademarks because such partnerships would be forced to compete against RMHC's unauthorized and unlawful sales and offers for sale of products bearing one or more of Elk101's Trademarks.

156.    Elk101 is entitled to damages and injunctive relief for RMHC's tortious interference with Elk101's prospective economic advantage.

### Demand for Jury Trial

Elk101 hereby demands a jury trial on all issues so triable.

### Prayer for Relief

WHEREFORE Elk101 respectfully prays for:

1.    Judgment that RMHC has infringed one or more of Elk101's Trademarks in violation of § 1125 of Title 15 of the United States Code;

2.    Judgment that RMHC has engaged in unfair competition in violation of § 1125 of Title 15 of the United States Code;

3.    Judgment that RMHC has infringed one or more of Elk101's Trademarks under Idaho law;

4.    Judgment that RMHC has engaged in unfair competition in violation of Idaho Statute § 48-603;

61550.0001.15530473.1

5.      Judgment and a declaration that (i) Elk101 first used the ELK101 mark in the '736 Application in commerce no earlier than 2011; and that (ii) as between Elk101 and RMHC, Elk101 is the senior user of the ELK101 mark in the '736 Application;

6.      Judgment and a declaration that RMHC (i) has no ownership rights in the mark applied for in the '736 Application; (ii) has no ownership rights in any of the Elk101 Trademarks; (iii) is not entitled to use in commerce the mark applied for in the '736 Application; and (iv) is not entitled to use in commerce any of the Elk101 Trademarks;

7.      An order directing the Director of the U.S. Patent & Trademark Office to cancel and/or refuse to grant RMHC any and all trademarks and/or trademarks applications for the '736 Application, for ELK101, and for any of the Elk101 Trademarks;

8.      An order directing RMHC to withdraw and/or cancel the '736 Application;

9.      A permanent injunction ordering RMHC to permanently refrain from filing any trademark applications for ELK101, for any of the Elk101 Trademarks, or for any confusingly similar mark;

10.      Judgment that RMHC has breached the contract between Elk101 and RMHC by failing to pay Elk101 the entire amounts owed to Elk101, or, in the alternative, that Elk101 is entitled to relief under quasi-contract and/or unjust enrichment under Idaho law;

11.      Judgment that RMHC has tortiously interfered with Elk101's prospective economic advantage in violation of Idaho law;

12.      A permanent injunction against any further infringement of Elk101's Trademarks, false designation of origin, unfair competition, and tortious interference by RMHC and each of its agents, employees, servants, attorneys, successors and assigns, and all others in privity or active concert with any of them;

61550.0001.15530473.1

13.    An award of damages adequate to compensate Elk101 for RMHC's infringement of Elk101's Trademarks, unfair competition, breach of contract, and tortious interference; including unpaid royalties, lost profits, and disgorgement of RMHC's profits;

14.    An award of Elk101's reasonable costs and attorney's fees; and

15.    Such other and further relief as this Court deems just and proper.

DATED this 1st day of March, 2023.

HAWLEY TROXELL ENNIS & HAWLEY LLP

By  /s/ Sawyer R. Margett_____
        Kimberly A. Kamel, ISB No. 6896
        Sawyer R. Margett, ISB No. 11385

        Binal Patel (*pro hac vice forthcoming*)
        Brian Apel (*pro hac vice forthcoming*)
        Alex Bruening (*pro hac vice forthcoming*)

        *Attorneys for Plaintiff Jacobsen Outdoor Group, LLC*

61550.0001.15530473.1