UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JACOBSEN OUTDOOR GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ROCKY MOUNTAIN HUNTING CALLS & SUPPLIES, LLC,<br><br>Defendant. | Case No. 2:23-cv-00088-AKB<br><br>**MEMORANDUM DECISION AND ORDER RE KURTIS HOWARD'S MOTION TO QUASH SUBPOENA DUCES TECUM AND FOR PROTECTIVE ORDER** |

Before the Court is non-party Kurtis Howard's motion to quash or otherwise modify the subpoena issued by Defendant Rocky Mountain Hunting Calls and Supplies, LLC. (Dkt. 20; *see* Dkt. 23 at p. 4 (requesting the Court either quash or modify the subpoena)). Finding that oral argument would not significantly aid its decision-making process, the Court decides the motion on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). The Court grants the motion and modifies the subpoena.

## I. BACKGROUND

Plaintiff Jacobsen Outdoor Group, LLC alleges it has operated under the assumed business name of "Elk101 and/or Elk101.com" since 2009, and under that name, Plaintiff launched a website aiming information, goods, and services at the elk hunting community. (Dkt. 1 at ¶¶ 9-11). Defendant Rocky Mountain Hunting Calls & Supplies, LLC approached Plaintiff about creating an Elk101-branded elk call to be promoted by both parties. (Dkt. 1 at ¶ 40). Eventually, Plaintiff permitted Defendant to distribute and sell other products bearing the Elk101 brand, and in exchange, Defendant paid a royalty to Plaintiff for these products. (Dkt. 1 at ¶¶ 41, 52-56). Plaintiff and Defendant later entered an agreement whereby Plaintiff agreed to place advertisements for Defendant on Plaintiff's Elk101 website. (Dkt. 1 at ¶¶ 49-50). As the parties' relationship developed, Defendant's employee, Howard, became Plaintiff's "primary point of contact" with Defendant. (Dkt. 1 at ¶ 55).

In 2019, Defendant was sold to or otherwise acquired by Dale Ames. (Dkt. 1 at ¶ 45). Eventually, Howard allegedly acquired an ownership interest in Defendant as well. (*Id.*). Despite these changes, Howard informed Plaintiff the prior agreements with Defendant would continue, and Defendant continued to pay Plaintiff royalty payments. (*Id.*). In January 2022, Defendant allegedly fired Howard. (Dkt. 1 at ¶ 55). Despite Howard's departure, the parties continued to develop and manufacture products together. (*Id.*).

Beginning in May 2022, Defendant's royalty payments to Plaintiff were significantly smaller. (Dkt. 1 at ¶¶ 57-61). Plaintiff allegedly requested an accounting of the payments, but Defendant failed to provide an accounting. (Dkt. 1 at ¶ 61). Subsequently, Plaintiff terminated the royalty agreement with Defendant and demanded Defendant cease sale of any Elk101-brand products by December 31, 2022. (Dkt. 1 at ¶ 63). Defendant has continued to sell products bearing the Elk101-brand. (Dkt. 1 at ¶¶ 64-68).

In March 2023, Plaintiff filed a complaint against Defendant, stating claims for, among other things, trademark infringement, unfair competition and breach of contract. (Dkt. 1 at ¶¶ 86-156). On July 21, 2023, Defendant subpoenaed Howard, seeking production of nine items. (Dkt. 20-1 at p. 8). On August 18, 2023, Howard provided a response to items two through nine of the subpoena. Items two through nine sought specific communications from the email address bbgcinc@gmail.com, as well as text messages between Howard and Plaintiff's founder Corey Jacobsen. (Dkt. 20-1 at p. 8). Howard responded to these requests. (*See* Dkt. 20-1 at pp. 8-9). Howard declined, however, to respond to item one, which sought "[a]ll communications received to and sent from the email address bbgcinc@gmail.com from April 1, 2019 to present." (Dkt. 20-1 at pp. 8-9). Howard asserted Defendant's item one request was "unduly burdensome" and sought "personal materials" not related to the present case. (Dkt. 20-1 at Ex. B). Following a flurry of emails between counsel, Howard filed the instant motion to quash the subpoena. (*See* Dkt. 20).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. A district court must quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv); *see Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994); *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975). Whether a subpoena is unduly burdensome depends on the facts of the case. *Green v. Baca*, 226 F.R.D. 624, 653-54 (C.D. Cal. 2005), order clarified, No. CV 02-204744MMMMANX, 2005 WL

283361 (C.D. Cal. Jan. 31, 2005).  While the moving party carries the burden of persuasion on a motion to quash, the party issuing the subpoena must show the information sought is relevant and material to the case at bar.  *Id.*; *see* Fed. R. Civ. P. 26(b)(1) (generally limiting scope of discovery to information "relevant to any party's claim or defense and proportional to the needs of the case"); *Oyenik v. Corizon Health Inc.*, No. CV-13-01597-PHX-SPL (BSB), 2014 WL 12787872, at *1 (D. Ariz. Nov. 20, 2014) ("A subpoena issued under Federal Rule of Civil Procedure 45 is subject to the relevance standard of Rule 26.").

### III.  ANALYSIS

Howard seeks to quash the subpoena because he argues, to the extent he has not complied with the subpoena, his failure is because the subpoena is overbroad, seeks information not relevant to this action, and represents an improper use of the federal subpoena power.  (Dkt. 20 at pp. 1-2).  In response, Defendant contends, first, that Howard waived any objection to the subpoena by failing to timely object and, second, that the subpoena is proper.  (Dkt. 22 at pp. 4-10).

The Court first addresses Howard's failure to timely serve an objection.  Under Federal Rule of Civil Procedure 45(d)(2)(B), an objection to a subpoena "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."  Generally, failure to timely serve an objection constitutes a waiver of all grounds for objection.  *E.g.*, *Schoonmaker v. City of Eureka*, No. 17-CV-06749-VC (RMI), 2018 WL 5829851, at *1 (N.D. Cal. Nov. 7, 2018); *McCoy v. Southwest Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002).  In unusual circumstances and for good cause, however, a party's failure to object does not amount to a waiver.  *McCoy*, 211 F.R.D. at 385.  Unusual circumstances may exist where the subpoena is overbroad on its face, exceeds the bounds of fair discovery, or the subpoenaed witness is a non-party acting in good faith.  *Wade v. City of Fruitland*, 287 F.R.D. 638, 641 (D. Idaho 2013); *see McCoy*, 211 F.R.D. at 385.

Howard does not contend he filed any objection within fourteen days but instead argues unusual circumstances exist in this case.  (Dkt. 23 at p. 2).  First, Howard argues the subpoena is overbroad because item one seeks all communications from a personal email address through which he contends only "*some* business" was conducted.  (Dkt. 23 at p. 3).  Second, Howard argues he acted in good faith because he responded to eight of the nine items in the subpoena and seven of those items sought more specific communications from the same email address.  (Dkt. 23 at

**MEMORANDUM DECISION AND ORDER - 3**

pp. 2-4; *see* Dkt. 20-1 at p. 8).  Third, Howard asserts he and Defendant "have been in active and extensive communication about the subject matter at issue."  (Dkt. 23 at p. 4).

In response, Defendant argues that Howard waived any objection because no unusual circumstances exist in this case and that Howard's failure to timely object is not otherwise supported by good cause.  (Dkt. 22 at p. 6).  Interestingly, however, Defendant also contends that it owns the bbgcinc@gmail.com email address and that Howard refuses to provide Defendant with access to that email address.  (*See* Dkt. 22 at p. 2).  Also, Howard and Defendant both indicate that they are opposing parties in a state court case and that the same email address, and its ownership, are potentially issues in the state court case.  (*See* Dkt. 20-1 at pp. 2-3; Dkt. 22 at pp. 8-9).  Howard notes the state court case is "very contentious."  (Dkt. 20-1 at p. 2).

The Court finds unusual circumstances exist in this case, because item one of the subpoena, seeking "[a]ll communications received to and sent from" an email address, is, on its face, an overbroad request that seemingly exceeds the bounds of fair discovery relative to this case.  *See Premium Serv. Corp.*, 511 F.2d at 229 (affirming quash of subpoena where "requests for documents were sweeping in nature"); *see also Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813-14 (9th Cir. 2003) (affirming quash where subpoena was not tailored to needs of case and represented an attempt to annoy or harass, rather than attempt to obtain relevant information).  Further, Howard attempted to act in good faith by responding to items one through eight that sought more specific and relevant communications from the same email address.  The Court notes, however, that the parties were well-aware of their respective positions on ownership of the email address due to the state court case and that such awareness should have resulted in a timely objection and efforts to resolve this present issue prior to this motion.  Nonetheless, the Court concludes unusual circumstances exist and declines to find Howard waived his objection.

Howard requests the Court quash or modify the subpoena because the subpoena is "overbroad, overburdensome, and [seeks] information not relevant to this action" and represents a misuse of federal subpoena power.  (Dkt. 20 at p. 1).  Howard also argues that he has complied with the subpoena in responding to items two through nine and that the Court should therefore find the subpoena satisfied.  (Dkt. 20 at pp. 1-2).

Item one of the subpoena asks for "[a]ll communications received to and sent from the email address bbgcinc@gmail.com from April 1, 2019 to present."  (Dkt. 20-1 at p. 8).  Howard maintains this email account is his personal email account containing personal and household

emails unrelated to the parties' business dispute. (Dkt. 20-1 at ¶ g; Dkt. 23 at p. 3). Defendant does not dispute Howard's characterization of the email account as a personal account which he sometimes used for business purposes. Based on Defendant's state court dispute with Howard, Defendant likely already knew Howard maintained the account was personal when Defendant subpoenaed all communications from the account. Because item one seeks all communications from a personal account, regardless, of their relevance to this dispute, the Court finds item one is overbroad and unduly burdensome. *Oyenik*, 2014 WL 12787872, at *2 (finding subpoena overbroad where a plaintiff failed to limit the subpoena "to certain categories of documents"); *see Premium Serv. Corp.*, 511 F.2d at 229; *Mattel, Inc.*, 353 F.3d at 813-14.

Howard contends he conducted a keyword search of the account to respond to the remaining items of the subpoena. The search identified approximately 750 pages of documents, which he produced to Defendant. Defendant neither disputes that it received these documents nor otherwise indicates what information it did not receive related to this dispute that it expected to be produced. Accordingly, Defendant has failed to establish that Howard failed to comply with the subpoena.

## IV.  ORDER

**IT IS ORDERED:**

1. Non-party Howard's Motion to Quash Subpoena Duces Tecum and for Protective Order (Dkt. 20) is **GRANTED**. The Court modifies the subpoena and strikes item one, requesting: "All communications received to and sent from the email address bbgcinc@gmail.com from April 1, 2019 to present." *See* Fed. R. Civ. P. 45(d)(3)(A).

DATED: January 23, 2024

*Amanda K. Brailsford*
Amanda K. Brailsford
U.S. District Court Judge