UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JACOBSEN OUTDOOR GROUP, LLC, | Case No. 2:23-cv-00088-AKB |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| ROCKY MOUNTAIN HUNTING CALLS & SUPPLIES, LLC, | |
| Defendant. | |

Pending before the Court is the Motion for Partial Summary Judgment of Plaintiff Jacobsen Outdoor Group, LLC (Jacobsen Outdoor) and the Motion for Summary Judgment of Defendant Rocky Mountain Hunting Calls & Supplies, LLC (RMHC). (Dkts. 34, 35). The parties have also filed several motions related to the summary judgment submissions, including Jacobsen Outdoor's motion to strike RMHC's statement of facts (Dkt. 40); Jacobsen Outdoor's motion to expedite its motion to strike (Dkt. 41); and RMHC's motion to file an overlength statement of facts. (Dkt. 43). Having reviewed the record and the parties' submissions, the Court finds the facts and legal arguments are adequately presented and oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing.[1] Dist. Idaho Loc. Civ.

---

[1]    RMHC specifically indicated it was moving for summary judgment "without oral argument." (Dkt. 35 at p. 1).

R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.").

For the reasons discussed below, the Court grants Jacobsen Outdoor's partial summary judgment on its federal and state trademark infringement and unfair competition claims (Counts 1 through 4) and on RMHC's affirmative defenses, except for its permissive use defense. The Court denies RMHC's summary judgment motion. Further, the Court denies RMHC's motion to file excess pages, denies Jacobsen Outdoor's motion to strike, and denies its motion to expedite the motion to strike as moot.

## I.    BACKGROUND

Based on a review of the record, the Court finds the following facts are undisputed:

Corey Jacobsen (Corey) is a world champion elk caller. (Dkt. 34-8 at ¶ 3). In 2004, he founded Jacobsen Outdoor.[2] (Dkt. 34-1 at ¶ 1). In 2009, Jacobsen Outdoor filed an assumed business name of Elk101.com. (Dkt. 34-1 at ¶ 2; Dkt. 36-2 at ¶ 1). That same year, Jacobsen Outdoor launched a website under the name Elk101.com to advertise goods and services related to elk hunting. (Dkt. 34-1 at ¶ 3). For example, in July 2009, Elk101.com advertised and sold, among other things, "seats for an Elk 101 Extreme Elk Hunting Class" and a product identified as

---

[2]    Jacobsen Outdoor's original name was LOCHSA Homes, LLC. (Dkt. 34-1 at ¶ 1; Dkt. 37-2 at ¶ 2).

the "Elk101 E-scent-tial Wind-Detector." [3] (*Id.* at ¶¶ 4, 10; Dkt. 37-2 at ¶ 4) (attesting Jacobsen Outdoor also sold "apparel, hats, magazines, DVDs, wind detectors, and arrow wraps" bearing Elk101 mark). Both this product and the website prominently displayed the mark Elk101.com. (Dkt. 34-8 at Exs. A, B, D). According to Corey's declaration in support of Jacobsen Outdoor's summary judgment motion, the hunting class was a "huge success" and attendees were so numerous that Jacobsen Outdoor established a blog to respond to their questions and comments. (*Id.* at ¶¶ 4-6).

Corey's father, Rockie Jacobsen (Rockie), owned RMHC.[4] (Dkt. 34-1 at ¶ 13). In 2010, RMHC and Jacobsen Outdoor collaborated to create elk calls bearing the Elk101 mark. (*Id.* at ¶ 14). Further, Jacobsen Outdoor and RMHC entered into an oral agreement whereby RMHC agreed to pay Jacobsen Outdoor a 10 percent royalty on a quarterly basis for RMHC's sale of products bearing the Elk101 mark.[5] (*Id.* at ¶ 15).

In June 2019, RMHC was sold to Dale Ames (Ames). (*Id.* at ¶ 22). During Rockie's deposition, Rockie denied representing to Ames that RMHC owned the Elk101 mark while negotiating the sale of RMHC. (Dkt. 34-5 at p. 43, lls. 15-22). After the sale, RMHC continued to

---

[3]    RHMC asserts that the wind detector is inadequate to show the sale of goods using the Elk101 mark but does not refute Corey Jacobsen's declaration that Jacobsen Outdoor actually sold the wind detector product in 2009. (Dkt. 36 at p. 3).

[4]    RMHC's original name was Bugling Bull Game Calls, LLC. (Dkt. 34-1 at ¶ 13).

[5]    RMHC does not dispute this royalty agreement existed but relies on Rockie's deposition testimony that the agreement was the "same" as a written contract which RMHC had with another individual in the hunting industry, Steve Chappell, regarding other RMHC products. (Dkt. 36-2 at ¶ 27; *see also* Dkt. 36-3; Dkt. 35-8 at p. 88, lls. 21-25).

produce and sell Elk101 products and, also, to make quarterly royalty payments to Jacobsen Outdoor pursuant to the oral agreement between Jacobsen Outdoor and RMHC. (Dkt. 34-1 at ¶¶ 27, 30; *see also* Dkt. 34-8 at ¶ 50). In 2022, however, the business relationship between Jacobsen Outdoor and RMHC soured because, in January 2022, RMHC discharged the employee who was Jacobsen Outdoor's primary point of contact with RMHC and because RMHC's royalty payments for the first two quarters of 2022 were substantially reduced from the prior year's payments. (Dkt. 34-8 at ¶¶ 47, 57-58).

After Jacobsen Outdoor requested an accounting but RMHC failed to provide one, Corey notified RMHC in November 2022 that Jacobsen Outdoor was terminating its business relationship with RMHC and that RMHC would need to remove "all references to the Elk101 brand and the Corey Jacobsen likeness . . . from all [RMHC's] product/packaging/marketing by the end of the year (12/31/22)." (Dkt. 34-1 at ¶ 31; Dkt. 34-8 at pp. 32-33). RMHC ceased making royalty payments and modified its packaging to remove Corey's name, image, and signature, but it continued selling products with the Elk101 mark. (Dkt. 34-1 at ¶ 34).

After Jacobsen Outdoor terminated its business relationship with RMHC, both parties attempted to register the Elk101 mark with the Patent and Trademark Office (PTO). On February 17, 2023, RMHC filed an application seeking to register the Elk101 mark. (Dkt. 34-3 at pp. 27-31). Its application indicates a first use date of "at least as early as" 2014. (*Id.* at p. 28). Then, on March 2, 2023, Jacobsen Outdoor filed an application seeking to register the Elk101 mark. (Dkt. 34-8 at pp. 42-45). Its application indicates a first use date of "at least as early as" November 2010. (*Id.* at p. 42). The PTO suspended the trademark proceedings pending resolution of this action. *Jacobsen Outdoor Group, LLC v. Rocky Mountain Hunting Calls & Supplies, LLC*,

MEMORANDUM DECISION AND ORDER - 4

Trademark Trial and Appeal Board, Proceeding No. 91290791 (May 17, 2024) (granting stipulated motion to suspend proceedings). As a result, the Elk101 mark is not registered to either RMHC or Jacobsen Outdoor.

In March 2023, Jacobsen Outdoor filed a complaint against RMHC alleging claims for trademark infringement and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125; trademark infringement under Idaho common law; unfair competition under Idaho Code § 48-603; breach of contract; quasi-contract/unjust enrichment; and tortious inference with economic advantage. (Dkt. 1 at ¶¶ 20-122, 140-56). Jacobsen Outdoor also seeks declaratory judgment that it owns the Elk101 mark. (*Id.* at ¶¶ 123-139).

Following discovery, both parties moved for summary judgment. Jacobsen Outdoor seeks partial summary judgment to establish its ownership of the Elk101 mark, RMHC's liability on Jacobsen Outdoor's federal and state claims for trademark infringement and unfair competition, and the failure of each of RMHC's affirmative defenses. Meanwhile, RMHC purportedly moves for summary judgment on all of Jacobsen Outdoor's claims. RMHC, however, does not address Jacobsen Outdoor's claims for breach of contract, quasi-contract/unjust enrichment, or tortious interference with economic advantage. Accordingly, these claims are not at issue on summary judgment, and the Court does not address them.

## II.    LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986).  The trial court's role at summary judgment is not "to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted).   In considering a motion for summary judgment, the court must "view[ ] the facts in the non-moving party's favor." *Id.*  To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor." *Id.* (citation omitted).

The trial court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather, the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

Where parties file cross-motions for summary judgment on the same issue, the court must consider both motions and all evidence submitted by both parties. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Each motion must be considered on its own merits. *Id*. Even if both parties assert no genuine disputes of material fact exist, the court must still review the record and determine disputes of material fact exist. *Id*.

Generally, summary judgment is disfavored in the trademark arena because of the intensely factual nature of trademark disputes. *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999). However, if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, no genuine factual issue exists for trial. *Matsushita Elec. Indus.*

*Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the court must draw all reasonable inferences in favor of the nonmoving party, the nonmoving party has the obligation to produce a factual predicate from which the court may draw an inference. *Harman Int'l Indus., Inc. v. Jem Accessories, Inc.*, 668 F. Supp. 3d 1025, 1034 (C.D. Cal. 2023). A party's mere disagreement with a fact or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

"A plaintiff seeking summary judgment on its claim[s] is not obligated to affirmatively disprove a defendant's affirmative defense in its opening brief." *United States v. Westreich*, No. 2:21-CV-09013-SSS-SKX, 2024 WL 2000088, at *3 (C.D. Cal. Mar. 14, 2024). If the defendant fails to offer evidence that would permit judgment on its affirmative defense, the plaintiff can show there is no genuine dispute by simply arguing the defendant failed to produce evidence showing a genuine dispute of a material fact. *Id.*; *see also* Fed. R. Civ. P. 56(c)(1)(B) advisory committee's note to 2010 amendment ("[A] party need not always point to specific record materials. One party, without citing any other materials, may respond or reply that materials cited to dispute or support a fact do not establish the absence or presence of a genuine dispute. And a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."); *Forum Ins. Co. v. Devere Ltd.*, 151 F. Supp. 2d 1145, 1147 (C.D. Cal. 2001) ("[W]hen the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The moving party need not disprove the other party's case.").

MEMORANDUM DECISION AND ORDER - 7

### III.    ANALYSIS

**A.    Motions Regarding Summary Judgment Filings**

**<u>RMHC's summary judgment filings do not comply with the Local Rules</u>**. Rule 7.1 of

the District of Idaho Local Civil Rules requires that a party opposing summary judgment must file

a statement of material, disputed facts and that statement may not exceed ten pages. Dist. Idaho

Loc. R. 7.1(c)(2). Contrary to this rule, RMHC filed *two* separate factual statements opposing

Jacobsen Outdoor's summary judgment motion. One statement relates to "disputed facts," is in a

chart format, and is twenty-two pages. (Dkt. 36-1). The other statement relates to "material facts"

and is nine pages.

Jacobsen Outdoor moves to strike the entirety of RMHC's nine-page statement of material

facts and "the overlength portion" of its twenty-two-page statement of disputed facts. (Dkt. 40). In

response, RMHC submitted a "reformatted" version of its twenty-two-page statement, which is

sixteen pages (Dkt. 42-1), and moves to file that overlength statement—presumably in lieu of the

twenty-two-page statement. RMHC also improperly files an eleven-page statement rebutting

Jacobsen Outdoor's facts in support of RMHC's own summary judgment. (Dkt. 38-1); *see* Dist.

Idaho Loc. R. 7.1(b)(1) (providing moving party may file *single* ten-page statement of facts in

support of summary judgment). Jacobsen Outdoor, however, does not move to strike that improper

"rebuttal" statement.

The Court has reviewed RMHC's many factual statements and finds them unnecessarily

repetitive. Because they are redundant, the overlength statements do not impact the merits of the

Court's summary judgment decision. Although needlessly onerous, the Court's consideration of

the improper statements does not prejudice Jacobsen Outdoor. For this reason, the Court denies

both Jacobsen Outdoor's motion to strike RMHC's statements (Dkt. 40) and RMHC's motion to file a different overlength statement (Dkts. 42-1, 43) and concludes Jacobsen Outdoor's motion to expedite is moot. (Dkt. 41).

## IV.    SUMMARY JUDGMENT

### A.    Jacobsen Outdoor's Trademark Infringement and Unfair Competition Claims

**The Court considers Jacobsen Outdoor's infringement and unfair competition claims under the same analysis**. Jacobsen Outdoor bases its federal and state law claims for trademark infringement and unfair competition on the same alleged infringing conduct. (*See* Dkt. 1) (comparing Counts I, II, III, and IV). When trademark and unfair competition claims are based on the same conduct, courts consider the claims under the same analysis. *See, e.g.*, *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.8 (9th Cir. 1999) (noting federal trademark-infringement and unfair-competition analyses are "oftentimes identical"); *Smith Roofing & Siding, L.L.C. v. Smith*, Case No. 4:23-cv-00310-DCN, 2024 WL 1308983, at *2, 4 (D. Idaho March 26, 2024) (analyzing federal and state trademark infringement and unfair competition claims jointly). Further, trademarks and service marks are analyzed under the same basic framework. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1203 n.4 (9th Cir. 2012); *Chance v. Pac-Tel Teletrac, Inc*., 242 F.3d 1151, 1156 (9th Cir. 2001) ("Service marks and trademarks are governed by identical standards[;] like with trademarks, common law rights are acquired in a service mark by adopting and using the mark in connection with services rendered.").

Accordingly, the Court analyzes Jacobsen Outdoor's state and federal claims for trademark infringement and unfair competition jointly. To establish a claim for trademark infringement or

unfair competition, a plaintiff must show that: (1) "it has a protectible ownership interest in the mark"; and (2) "the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (citations omitted).

### 1. Jacobsen Outdoor's Protectable Ownership Interest in the Elk101 Mark

"The standard test of ownership is priority of use." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) (citation omitted). To establish a "protectible ownership interest" in the mark, "it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Id.* To demonstrate a priority of use, a plaintiff must show that: (1) it "actually adopted and used the mark[] in commerce" before the defendant in a manner sufficiently associating the mark with the plaintiff; and (2) the plaintiff's "use of the mark[] was continuous and not interrupted." *Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1125-26 (9th Cir. 2006).

A trademark is "deemed to be in use in commerce on . . . goods when . . . it is placed in any manner on the goods" and "the goods are sold in [] commerce." 15 U.S.C. § 1127(1)(A), (B). A service mark is "deemed [] in use in commerce . . . on services when it is used or displayed in the sale or advertising of services *and* the services are rendered in commerce." *Id.* at § 1127(2) (emphasis added). To establish a service mark, a plaintiff must show both that it used the mark to advertise the services and that it actually rendered the services. *Rearden*, 683 F.3d at 1204. "While the first use need not be extensive, the use must be bona fide and commercial in character." *Bazaar Del Mundo*, 448 F.3d at 1126.

"To be a continuing use, the use must be maintained without interruption." *Casual Corner Assocs., Inc. v. Causal Stores of Nev., Inc.*, 493 F.2d 709, 712 (9th Cir. 1974); *Spin Master, Ltd. Zobmondo Entertainment, LLC*, 944 F. Supp. 2d 830, 851 (C.D. Cal. 2012). "The Ninth Circuit has imposed a strict 'continuous use' requirement to demonstrate common law priority." *Spin Master*, 944 F. Supp. 2d at 851. In evaluating a mark's "continuous use," courts look for activities that "would tend to indicate a continuing effort or intent to continue" the use of the mark on a commercial scale. *Bazaar Del Mundo*, 448 F.3d at 1126. One need not show abandonment to prove another party failed to continuously use a mark. *Casual Corner Assocs.*, 493 F.2d at 711-12. Although the Ninth Circuit has found gaps in use as little as one to two years may indicate a lack of continuous use, *see, e.g., id.* at 712, continuous use may exist if a party undertakes efforts to establish a trade in the goods sold or at least an attempt to establish such a trade. *Spin Master*, 944 F. Supp. 2d at 851.

**<u>Jacobsen Outdoor used the Elk101 mark in commerce first</u>**. In support of Jacobsen Outdoor's claim that it owns the Elk101 mark, it argues it used the mark in the sale of goods and services before RMHC. (Dkt. 34 at pp. 4-7). Specifically, Jacobsen Outdoor notes that it advertised and sold seats for its "Elk 101 Extreme Elk Hunting Class" on its Elk101.com website in July 2009 and that in the same year, 2009, it sold its wind detector product which displayed the Elk101.com mark. (*Id.*). In response, RMHC asserts this wind detector product is inadequate to show the sale of goods using the Elk101 mark because Jacobsen Outdoor merely presents "a picture of a plastic bottle" without "any sales receipts or other evidence" of sales. (Dkt. 36 at p. 3).

RMHC's response, however, ignores Corey's declaration that Jacobsen Outdoor actually sold the wind detector product in 2009. Further, RMHC had the opportunity to discover the

existence or absence of any evidence of the product's actual sale, such as sales receipts. RMHC, however, does not offer any such evidence or argue that it does not exist. RMHC's suggestion that Jacobsen Outdoor did not sell the product because it only presents a picture of the product does not create a genuine issue of material fact.[6] This suggestion is inadequate to refute Corey's attestation that Jacobsen Outdoor did sell the product in 2009. Furthermore, RMHC's response ignores that Jacobsen Outdoor used the Elk101 mark to advertise and sell seats to a hunting class in 2009, as well as other evidence of Jacobsen Outdoor's use of the mark. (*See, e.g.*, Dkt. 39 at p. 2) (citing records showing other uses of the Elk101 mark).

**<u>RMHC's use of the Elk101 mark was subject to an oral license agreement</u>**. While it is undisputed that "in the 2010/2011 timeframe RMHC designed, developed, manufactured, marketed, and sold products bearing" the Elk101 mark (Dkt. 36 at p. 3), that fact neither refutes Jacobsen Outdoor's first use of the mark in 2009 nor establishes RMHC's ownership of the mark. Rather, RMHC used the mark as a licensee, not as an owner. It is undisputed that the parties orally agreed RMHC would and did pay Jacobsen Outdoor royalties for the sale of RMHC's products bearing the Elk101 mark. *See Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 595 (9th Cir. 2002) (noting it is well established trademark owner may grant license).

That the parties' license agreement was oral rather than written does not create a genuine issue of material fact. (Dkt. 36 at p. 4) (arguing "it is undisputed that there is no written licensing agreement between RMHC and Jacobsen [Outdoor]"). The law recognizes oral license agreements.

---

[6]     The Court understands that Jacobsen Outdoor presented a picture of the product to prove the product bore the Elk101 mark, not to prove actual sales as RMHC suggests.

*See, e.g.*, *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 652 (9th Cir. 2005) (affirming jury verdict based on use under oral license); 2 MᶜCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:43 (5th ed.) ("While the Lanham Act requires that assignments of federally registered marks or applications must be in writing, a license can be oral.") (footnotes omitted).

**<u>The parties' oral agreement was not an unenforceable "naked" license</u>**. "Licensing of a mark without adequate quality control is known as 'naked licensing.'" 2 MᶜCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 18:48 (5th ed.). "Failure to exercise control over the nature and quality of the goods or services sold by the licensee under the licensed mark can result in the loss of some or all rights in the licensed mark." *Id.*; *see also Barcamerica*, 289 F.3d at 596-97 (discussing "naked" licensing).

RMHC asserts that, if Jacobsen Outdoor had any right to the Elk101 mark, it lost that right because the parties' license agreement was a "naked" license. In support, RMHC argues that "without an express license agreement, there is no disputed material fact that Jacobsen [Outdoor] lacks the necessary contractual right to inspect and supervise RMHC." (Dkt. 36 at p. 9). However, "[t]he lack of an express contract right to inspect and supervise a licensee's operations is not conclusive evidence of lack of control," and "formal quality control" is not necessary if the public is not deceived. *Barcamerica*, 289 F.3d at 597 (quoting and adopting district court analysis).

RMHC also argues that "there is no evidence on the record that Jacobsen [Outdoor] exercised actual control over" RMHC's products bearing the Elk101 mark. (Dkt. 36 at p. 9). The undisputed facts, however, refute this argument and establish the parties' license agreement was not "naked." As Jacobsen Outdoor notes, Rockie testified during his deposition that RMHC needed Jacobsen Outdoor's approval before using the Elk101 mark on any product. (Dkt. 34-1 at ¶ 16;

MEMORANDUM DECISION AND ORDER - 13

Dkt. 39 at 5-6). Further, the record shows Ames and Corey exchanged emails regarding quality control, indicating that Jacobsen Outdoor had expressed concerns about quality and that RMHC attempted to address those concerns. (Dkt. 39 at pp. 6-7). Indeed, Jacobsen Outdoor stated in its notice terminating the license agreement that "quality product is definitely important." (Dkt. 34-8 at p. 32). RMHC does not dispute these facts, which show Jacobsen Outdoor considered quality control important, required RMHC to make modifications to enhance quality, and thus, actually exercised quality control over RMHC's use of Elk101 mark. *See FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 516-17 (9th Cir. 2010) (noting courts have excused lack of contractual right to control quality where licensor demonstrated actual control).

**Jacobsen Outdoor's use of the Elk101 mark was continuous**. RMHC argues Jacobsen Outdoor cannot meet the strict requirement of continuous use because the undisputed facts show Jacobsen Outdoor "sold its right to the Elk101 and Elk101.com trademarks multiple times." (Dkt. 36 at p. 6). RMHC bases its argument on facts related to Jacobsen Outdoor's various business dealings between 2014 and 2022. First, RMHC notes that in June 2014, Jacobsen Outdoor entered into an agreement to "sell the assets of Elk101.com business to Camofire.com" and that in July 2015, Jacobsen Outdoor sold the Extreme Elk Magazine. (*Id.* at p. 5). Based on these facts, RMHC argues that "between July of 2015 and January of 2016, Jacobsen [Outdoor] did not own any business that used the Elk101 trademark in any manner." (*Id.*). Second, RMHC notes Jacobsen Outdoor canceled its assumed business name of Elk101.com in June 2014 and did not reinstate that assumed name until January 2016. (*Id.* at pp. 5-6). Finally, RMHC notes that, in January 2021, Jacobsen contributed its right to the Elk101 mark to a joint venture in which Jacobsen Outdoor held a 5 percent interest. (*Id.* at pp. 6-7).

MEMORANDUM DECISION AND ORDER - 14

Despite these facts, however, the undisputed facts also show that RMHC continued to pay Jacobsen Outdoor royalty payments under the parties' license agreement for RMHC's use of the Elk101 mark from 2010 until Jacobsen Outdoor terminated that agreement in December 2022. (*See, e.g.*, Dkt. 37-2 at p. 3) (providing Jacobsen Outdoor received royalty payments from RMHC during 2014 through 2016); (*id.* at p. 4) (providing Jacobsen Outdoor received royalty payment from RMHC during entire period of joint venture); (*id.* at p. 62) (excluding royalty payment from joint venture contribution). That RMHC complied with the parties' license agreement from 2010 until that agreement's termination undisputedly shows Jacobsen Outdoor was using the Elk101 mark during the periods RMHC challenges. Namely, Jacobsen Outdoor used the Elk101 mark to generate royalty income by licensing the mark to RMHC.

Further, the record shows Jacobsen Outdoor continued to maintain quality control of RMHC's products bearing the Elk101 mark during these periods.  (*See generally* Dkt. 39-1) (identifying numerous communications from 2017 through 2022 showing Jacobsen Outdoor exercising quality control). While the sale agreement's pendency between June 2014 and January 2016 and the existence of the joint venture may have limited Jacobsen Outdoor's use of the mark to licensing it to RMHC, that use is still sufficient to show an undisputed continuous use, which Jacobsen Outdoor maintained without interruption from 2010 to 2022. *See Spin Master*, 944 F. Supp. 2d at 851.

**The undisputed facts show that Jacobsen Outdoor has a protectible ownership interest in the mark**. In 2009, Jacobsen Outdoor actually adopted and used the Elk101 mark in commerce in a manner sufficient to associate that mark with Jacobsen Outdoor. Jacobsen Outdoor's use occurred before RMHC used the mark on its products, and RMHC's use was subject

to an oral license agreement for the mark's use. Although Jacobsen Outdoor had other business arrangements involving the mark, Jacobsen Outdoor reserved its use of the mark for the purpose of licensing it to RMHC; RMHC made royalty payments under the parties' agreement from 2010 through 2022; and Jacobsen Outdoor maintained quality control of RMHC's products bearing the mark during that period. Accordingly, there is no genuine material issue of fact that Jacobsen Outdoor has a protectible ownership interest in the Elk101 mark.

### 2. Probability of Consumer Confusion

In addition to establishing a protectible ownership interest in the Elk101 mark, Jacobsen Outdoor must establish RMHC's use of the mark is likely to cause consumer confusion. *See Network Automation*, 638 F.3d at 1144 (proving infringement requires showing of protectible ownership interest and consumer confusion). To succeed on a trademark infringement claim, the plaintiff must show a "reasonably prudent consumer" is likely to be confused as to the origin of the good or service bearing a mark. *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1130 n.5 (9th Cir. 1998). This case deals with allegations of "forward confusion," namely where a consumer confuses a "junior user's mark" with a senior user's "more well-known" mark. *Id.* The first to use the mark is the "senior" user, who may enjoin the "junior" user from using a similar mark in certain conditions. *Brookfield*, 174 F.3d at 1060. A plaintiff must show more than "simply a possibility" of confusion. *Rearden*, 683 F.3d at 1209.

Eight factors, commonly referred to as the *Sleekcraft*[7] factors, guide a court's "confusion" inquiry; they include: (1) the strength of the mark; (2) the proximity or relatedness of the goods; (3) the similarity of sight, sound, and meaning; (4) evidence of actual confusion; (5) marketing channels; (6) type of goods and purchaser care; (7) intent; and (8) the likelihood of expansion. *Dreamwerks*, 142 F.3d at 1129. This multi-factor inquiry is flexible, not mechanical. Courts consider "what each factor, and—more importantly—what the analysis as a whole, reveals about the ultimate question[:] the likelihood of consumer confusion as to the origin of the product or service bearing the allegedly infringing mark." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002) (cleaned up).

In support of Jacobsen Outdoor's summary judgment motion, Jacobsen Outdoor addresses each of the eight factors and argues each supports the conclusion that RMHC's use of the Elk101 mark undisputedly creates a likelihood of consumer confusion. (Dkt. 34 at pp. 11-14). In response, RMHC only attempts to refute one factor directly: evidence of actual confusion. RMHC's arguments inferentially[8] challenge two other factors: similarity of the sight, sound, and meaning and the proximity or relatedness of goods. Although RMHC does not use the phraseology of these latter two factors, RMHC's arguments relate to those factors in the context of the applicable caselaw.

---

[7]    *AMF, Inc., v Sleekcraft Boat*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003).

[8]    In many instances, RMHC fails to organize its summary judgment arguments under the correct analytical framework or to use the correct terminology. Nonetheless, the Court addresses its arguments in the context of the caselaw's consideration of the issues.

**Jacobsen Outdoor has produced evidence of actual confusion**. RMHC argues there is "no evidence of actual confusion." (Dkt. 36 at p. 12) ("Jacobsen [Outdoor] has presented no evidence of actual confusion."). The failure to prove actual confusion, however, is not dispositive. *Brookfield,* 174 F.3d at 1050; *see also Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1079 (N.D. Cal. 2012) ("[T]he absence of evidence of actual confusion is generally unnoteworthy because actual confusion is hard to prove."). Moreover, RMHC's assertion that there is no evidence of actual confusion is inaccurate. Jacobsen Outdoor produced numerous emails in the record from consumers indicating confusion regarding RMHC's use of the mark. (Dkt. 37-2 at pp. 109-21; *id.* at p. 112) ("Is this guy taking your business name?"). This is strong evidence of a likelihood of confusion. *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 633 (9th Cir. 2005) ("Evidence of actual confusion by consumers is strong evidence of likelihood of confusion."). RMHC appears to concede this point. (*See* Dkt. 35 at p. 4) (noting rule that "Plaintiffs [sic] proof of actual confusion resulting from Defendants' use of a confusingly similar mark constitutes such strong evidence of likely confusion as to preclude any reasonable finding otherwise") (citing *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1515 (11th Cir. 1984)).

**Elk101 and Elk101.com are essentially identical marks**. RMHC argues that the parties' use of trademarks is not similar because RMHC uses Elk101; Jacobsen Outdoor uses Elk101.com; and these marks are distinct. (Dkt. 35 at p. 6) (arguing "'Elk101' is distinguished between [sic] the 'Elk.com' used by [Jacobsen Outdoor]"). The Ninth Circuit, however, has rejected the importance of adding ".com" to a trademark for purposes of distinguishing the mark; it notes that courts "routinely conclude[] marks [distinguished only by ".com" are] essentially identical in similar context." *Brookfield*, 174 F.3d at 1055 (concluding MovieBuff and moviebuff.com are "identical

in terms of sight, sound, and meaning" and listing numerous other cases concluding marks with addition of ".com" are identical including "Post-It" and "post-it.com," "EPIX" and "epix.com," and "Planned Parenthood" and "plannedparenthood.com"); *see id.* at 1048 (noting two marks, such as domain name and store name, may be "so similar that consumers generally would regard them as essentially the same"); *Lahot v. Vericheck, Inc.*, 636 F.3d 501, 508 (9th Cir. 2011) (concluding "VERICHECK" and "vericheck.com" are identical or at least confusingly similar). Based on this authority, the Court rejects RMHC's assertion that Elk101 and Elk101.com are dissimilar. Rather, Elk101 and Elk101.com are essentially identical for purposes of an infringement analysis.

**The parties' uses of the Elk101 mark are related**. RMHC implicitly argues the parties' separate uses of the mark are unrelated because RMHC sells goods and Jacobsen Outdoor has allegedly never sold goods but rather only sells services. (*See, e.g.*, Dkt. 35 at p. 6) ("RMHC was the first to sell any product bearing the Elk101 mark, and [Jacobsen Outdoor] never sold any products bearing the name Elk101 related to hunting calls, any hunting product, or anything similar"); (*id.* at p. 8) (arguing consumers not likely to be confused because RMHC sells products and Jacobsen Outdoor does not); (Dkt. 36 at p. 3) (noting absence of evidence Jacobsen Outdoor used Elk101 "in association with sale of goods"); (Dkt. 38 at p. 10) ("There is no confusion, or likelihood of confusion, because RMHC produces goods and Jacobsen [Outdoor] provides online educational services[, and] the two areas of business are separate and distinct.").

RMHC neither specifically articulates why or how the goods it sells and services Jacobsen Outdoor provides are unrelated nor cites authority that the distinction between goods and services alone establishes unrelatedness. Meanwhile, Jacobsen Outdoor explains its services and RMHC's goods are related because the parties "paired to create elk call and non-elk call products related to

elk hunting," and Jacobsen Outdoor provides "education and other information regarding elk hunting, including the best elk hunting equipment to use [and] how to properly use that equipment, and sells hunting gear." (Dkt. 34 at p. 13).

Contrary to RMHC's assertion, goods and services may be related. "Goods and services are related when they are complementary, sold to the same class of purchasers, or similar in use and function." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1163 (9th Cir. 2021). Further, goods and services are related when the buying public would reasonably think they came "from the same source if sold under the same mark." *Id.* A plaintiff does not need to establish the parties are direct competitors to show relatedness of good and services. *Id.*

Based on the undisputed facts, the parties are selling goods and services to the same class of purchasers—hunters. Further, the goods and services are complementary: RMHC sells elk calls, and Jacobsen Outdoor trains customers how to use elk calls, among other things. Finally, evidence in the record indicates consumers could reasonably believe the products and services came from the same source because RMHC used the Elk101 mark for years in association with Corey's signature and likeness. Based on these facts, the Court finds RMHC's goods and Jacobsen Outdoor's services are related. Moreover, as discussed earlier, the record refutes RMHC's assertion that Jacobsen Outdoor's use of the Elk101 mark is limited to services; Jacobsen Outdoor has also sold goods bearing the mark.

**The undisputed facts show a likelihood of confusion**. Contrary to RMHC's assertion, Jacobsen Outdoor has presented evidence of actual confusion. The Ninth Circuit has rejected the argument that marks like Elk101 and Elk101.com are dissimilar, and the record shows the goods and services are closely related both in subject matter and target market. Considering all the

factors, the evidence of likely confusion in this case is sufficiently strong to support the conclusion that any finding to the contrary would be erroneous. Accordingly, although likelihood of confusion is generally a factual question, the Court concludes it is undisputed that RMHC's use of the Elk101 mark to sell goods likely, and indeed probably, creates reasonable consumer confusion. *See M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1085 (9th Cir. 2005) (noting party may prevail on ultimate question of likelihood of confusion of consumers by showing confusion is probable).

**RMHC's use of the Elk101 mark after Jacobsen Outdoor terminated the license agreement constitutes infringement and unfair competition**. The record undisputedly establishes that Jacobsen Outdoor has a protectible ownership interest in the Elk101 mark and that RMHC's use of the mark probably causes consumer confusion. Once Jacobsen Outdoor terminated the license agreement in December 2022, RMHC had no right to continue using the mark. "It is well established that when a license ends, a former licensee's continued use of the relevant marks constitutes infringement." *LVDV Holdings, LLC v. Shelton*, CV 22-5921-RSWL-PD, 2023 WL 3258437, at * 5 (C.D. Cal. May 2, 2023). Accordingly, the Court concludes no genuine issue of material fact precludes summary judgment for Jacobsen Outdoor on RMHC's liability for trademark infringement and unfair competition under Counts I through IV.

**B.    RMHC's Affirmative Defenses**

**1.  Abandonment**

RMHC moves for summary judgment asserting that Jacobsen Outdoor abandoned any right to the Elk101 mark. (Dkt. 35 at p. 5). To show abandonment, a party must prove both the trademark owner's "(1) discontinuance of trademark use and (2) intent not to resume such use." *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931, 935 (9th Cir. 2006) (cleaned up).

Abandonment of a trademark is an affirmative defense. *See, e.g.*, *Harman Int'l*, 668 F. Supp. 3d at 1035 (denying summary judgment motion on abandonment for failure to allege affirmative defense). A party must affirmatively allege its affirmative defenses in its answer. *See* Fed. R. Civ. P. 8(c) (requiring defendant to "affirmatively state any avoidance or affirmative defense" in a responsive pleading); *Rosen v. Masterpiece Marketing Group, LLC*, 222 F. Supp. 3d 793, 798-99 (C.D. Cal. 2016) (requiring affirmative defense be alleged "in short and plain terms"). In determining whether the party sufficiently pleads an affirmative defense, a court looks to whether the pleading "gives plaintiff fair notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979).

**<u>RMHC failed to allege abandonment as an affirmative defense</u>**. Jacobsen Outdoor objects to RMHC's reliance on the theory of abandonment, arguing RMHC neither pled abandonment nor moved to amend its answer to plead the theory. (Dkt. 37 at pp. 1-2). RMHC neither disputes that abandonment is an affirmative defense nor that it did not specifically allege abandonment in its answer. (Dkt. 38 at p. 2). Instead, RMHC relies on its alleged affirmative defense of estoppel, which avers simply that Jacobsen Outdoor "is estopped from bringing the claims." (Dkt. 8 at p. 12; Dkt. 38 at p. 2). RMHC contends the affirmative defense of abandonment "falls squarely within" this estoppel defense. (Dkt. 38 at p. 2).

In support, RMHC relies on the concept of a "naked license"[9] and *FreecycleSunnyvale*, 626 F.3d at 519. (Dkt. 38 at pp. 2-3). It notes that the Ninth Circuit in *FreecycleSunnyvale* ruled

---

[9]    As already noted, a "naked license" may occur when a trademark owner licenses a mark without adequate quality control and may result in the owner's loss of some or all the rights to the mark. 2 McCarthy on Trademarks and Unfair Competition, § 18:48 (5th ed.).

that if "the licensor fails to exercise adequate quality control over the licensee, a court may find the trademark owner has abandoned the trademark, in which case the owner would be estopped from asserting rights to the trademark." (Dkt. 38 at p. 3) (quoting *FreecycleSunnyvale*, 626 F.3d at 515). Based on this language, RMHC essentially argues a naked license results in abandonment which equates to estoppel, which means RMHC alleged the affirmative defense of abandonment defense by alleging an affirmative defense of estoppel. The Court disagrees with this argument.

**RMHC's estoppel defense did not give Jacobsen Outdoor fair notice of its abandonment defense**. The term "estoppel" is broad and includes any "claim or right that contradicts what one has said or done before or what has been legally established as true." *Estoppel*, BLACK'S LAW DICTIONARY (12th ed. 2024). In contrast, abandonment of a trademark requires proof of specific elements, namely, discontinuance of the trademark's use and intent not to resume that use. *Electro Source*, 458 F.3d at 935. Meanwhile, RMHC's allegation of estoppel is very general, does not give Jacobsen Outdoor notice that discontinuance and intent are at issue, and does not even allege which of Jacobsen Outdoor's numerous claims are subject to the defense. The Ninth Circuit's language in *FreecycleSunnyvale* does not support a contrary conclusion.

Further, the Court rejects RMHC's assertion that Jacobsen Outdoor otherwise had fair notice of RMHC's abandonment defense. RMHC's counsel's letter to Jacobsen Outdoor in December 2022 that he understands Jacobsen Outdoor "no longer own[s] Elk101 and therefore [has] no legal standing" regarding the mark is not adequate to provide fair notice of the affirmative defense of abandonment. (Dkt. 37 at p. 6) (citing Dkt. 37 at p. 6 and Dkt. 34-8 at Ex. H). The statement relates to ownership, not abandonment. Likewise, Corey's deposition did not give Jacobsen Outdoor fair notice of RMHC's abandonment defense. Although Corey was asked about

Jacobsen Outdoor's decision to cancel its assumed business name of Elk101.com and his contribution to the joint venture, the issue of abandonment is never specifically raised during Corey's deposition.

**Jacobson Outdoor did not have a fair opportunity to discover RMHC's assertion of abandonment**. The Court rejects RMHC's alternative argument it should consider abandonment despite RMHC's failure to allege that defense. A defendant may assert an affirmative defense for the first time on summary judgment if it does not prejudice the plaintiff. *Day v. LSI Corp.*, 705 Fed. App'x 539, 540 (9th Cir. 2017). Conversely, a defendant's failure to raise a defense is prejudicial if the plaintiff may have prepared its case differently or advanced distinct legal arguments against the defense. *Sram Corp. v. Shimano, Inc.*, 25 Fed. App'x 626, 629 (9th Cir. 2002); *Heejoon Chung v. U.S. Bank, N.A.*, 250 F. Supp. 3d 658, 675 (D. Hawaii 2017). The plaintiff bears the burden of showing that a court's consideration of an unalleged affirmative defense on summary judgment is prejudicial. *360 Destination Group Florida, LLC v. 360 DG, LLC*, Case No. 8:21-cv-02114-SPG-DFM, 2024 WL 3550478, at *10 (C.D. Cal. 2024) (noting plaintiff has burden to show prejudice).

Contrary to RMHC's assertion, Jacobsen Outdoor could be prejudiced by consideration of RMHC's abandonment defense.[10] A significant focus of RMHC's summary judgment motion, and its opposition to Jacobsen Outdoor's motion, is dedicated to RMHC's abandonment argument. If RMHC had alleged abandonment as an affirmative defense, Jacobsen Outdoor would have had an

---

[10]    While the Court concludes RMHC's abandonment theory fails under the undisputed facts, Jacobsen Outdoor could be prejudiced on appeal by not having fair notice of the defense before summary judgment.

**MEMORANDUM DECISION AND ORDER - 24**

opportunity to explore that issue in discovery. For example, as Jacobsen Outdoor notes, it took a Rule 30(b)(6) deposition which solicited information regarding each of RMHC's alleged affirmative defenses. (Dkt. 34 at p. 15). If RMHC has alleged abandonment, Jacobsen Outdoor would have undoubtedly deposed RMHC's designee about that defense.

Regardless, the undisputed facts show Jacobsen Outdoor did not abandon its trademark rights. As noted above, Jacobsen Outdoor continuously used the Elk101 mark by licensing it to RMHC, and this continuous use refutes an assertion Jacobsen Outdoor discontinued using the mark and intended not to resume using it. *See Electro Source*, 458 F.3d at 935 (requiring showing of intent not to resume use to establish abandonment of mark).

### 2. RMHC's Other Affirmative Defenses

**RMHC's other affirmative defenses—except for permissive use—also fail**. Jacobsen Outdoor moves for summary judgment on each of RMHC's affirmative defenses.[11] It argues that because RMHC failed to offer any facts in support of its affirmative defenses during a Rule 30(b)(6) deposition, RMHC may not oppose Jacobsen Outdoor's motion on those defenses. (Dkt. 34 at pp. 15-16). Jacobsen Outdoor fails to cite any authority supporting this proposition— that RMHC may not oppose summary judgment absent Rule 30(b)(6) testimony on its affirmative defenses. Regardless, RMHC has the burden to show the undisputed facts do not warrant summary

---

[11]    RMHC very generally alleges the following affirmative defenses: (1) estoppel, (2) unclean hands, (3) fair use, (4) prior registration, (5) collateral use, (6) invalid trademark, (7) permissive use and/or use with a license, (8) laches, and (9) interference with RMHC's rights. RMHC does not respond to Jacobsen Outdoor's summary judgment argument challenging RMHC's "interference" defense. The Court construes that failure as conceding the defense and does not address it.

judgment on its affirmative defenses. *See* Fed. R. Civ. P. 56(c)(1)(B) advisory committee's note to 2010 amendment ("[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."). Neither RMHC's arguments nor the undisputed facts preclude summary judgment for Jacobsen Outdoor on RMHC's affirmative defenses, with the exception of RMHC's permissive use defense.

**Neither estoppel nor laches bars Jacobsen Outdoor's claims**. RMHC argues Jacobsen Outdoor is estopped because "there was no written agreement"; there was "no licensing agreement restricting or monitoring the quality of goods and services"; and "Ames relied upon the [Elk101] brand being owned by RMHC" when he purchased RMHC. (Dkt. 36 at p. 14). Contrary to RMHC's estoppel argument, however, the undisputed facts show that Rockie never represented to Ames that RMHC owned the Elk101 mark when selling RMHC; Jacobsen Outdoor sold both goods and services using the Elk101 mark in 2009; the parties performed under an oral license agreement for RMHC's use of the Elk101 mark from 2010 until 2022; Jacobsen Outdoor exercised quality control over RMHC's products bearing the mark during the agreement's term; and although that agreement was oral, the law recognizes oral license agreements. *See, e.g.*, *Watec*, 403 F.3d at 652 (affirming jury verdict based on oral license); 2 McCarthy on Trademarks and Unfair Competition § 18:43 (5th ed.) ("While the Lanham Act requires that assignments of federally registered marks or applications must be in writing, a license can be oral.") (footnotes omitted). This rule—that an oral licensing agreement is enforceable—is also fatal to RMHC's laches defense, which RMHC premises on the absence of a written agreement. (Dkt. 36 at p. 19) (arguing

Jacobsen Outdoor delayed asserting its trademark rights for "over a decade" because there was no written agreement for RMHC's use).

**RMHC did not register the Elk101 mark, and Jacobsen Outdoor's trademark right is not invalid**. The undisputed facts refute RMHC's affirmative defenses of trademark invalidity and prior registration. (*See* Dkt. 8 at pp. 12-14, ¶ 6) (alleging failure "due to [RMHC's] prior registration"); (*id.* at ¶ 8) (alleging failure "because any claim of trademark rights [is] invalid"); (*id.* at ¶ 11) (alleging failure "because any alleged trademark is invalid"). Contrary to RMHC's assertion, the Elk101 mark is not registered. Rather, the undisputed facts show that RMHC has never obtained a registration on the Elk101 mark. *See Jacobsen Outdoor Group*, Proceeding No. 91290791 (granting stipulated motion to suspend proceedings). Further, as discussed above, Jacobsen Outdoor has a protectible ownership interest in the mark.

**RMHC's use of the Elk101 mark does not constitute either a "collateral use" or a "fair use**." A fair use occurs when a defendant's use of a term, other than as a mark, is descriptive of and used in good faith to fairly describe the defendant's goods. 15 U.S.C. § 1115(b)(4); *Bell v. Harley Davidson Motor Co.*, 539 F. Supp. 2d 1249, 1256-57 (S.D. Cal. 2008). Generally, the fair use defense provides that a junior user is always entitled to use a descriptive term in good faith in its primary, descriptive sense other than as a trademark. *Bell*, 539 F. Supp. 2d at 1257. The elements of the classic fair use defense are that the defendant (1) is not using the term as a trademark, (2) uses the term only to describe its goods and services, and (3) uses the term fairly and in good faith. *Id.*

Contrary to RMHC's assertion that it has used Elk101 only as a descriptive term, the undisputed facts show that RMHC used Elk101 as a trademark. RMHC used the mark pursuant to

a license agreement and attempted to register the mark after Jacobsen Outdoor terminated that agreement. Further, the term "Elk101" is not descriptive of RMHC's goods. If anything, Elk101 is more descriptive of a training course than of goods. Because the mark has been associated with Corey's signature and likeness, RMHC's use of the mark was obviously intended to capitalize on the goodwill of Corey's business, Jacobsen Outdoor, and is neither a fair nor collateral use of the mark. RMHC's reliance on *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350 (9th Cir. 1969), and *Laura Secord Candy Shops Ltd. v. Barton's Candy Corp.*, 368 F. Supp. 851 (N.D. Ill. 1973), do not change this conclusion. Both cases are inapposite.

**RMHC's use of the Elk101 mark was subject to a license agreement and, thus, permissive**. As discussed above, the undisputed facts show RMHC's use was subject to a license agreement. Under the license agreement, RMHC paid royalties to Jacobsen Outdoor from 2010 until 2022. During this time, RMHC was generally permitted to use the mark and its use was not infringing. For this reason, Jacobsen Outdoor is not entitled to summary judgment on RMHC's permissive use defense. *Cf. Softketeers, Inc. v. Regal W. Corp.*, No. 819CV00519JWHJDEX, 2022 WL 17968835, at *15 (C.D. Cal. Dec. 22, 2022) ("The existence of a license is an affirmative defense to a claim of copyright infringement and the burden of proof is ultimately on the party seeking to avoid infringement liability.").

## V.    ORDER

**IT IS ORDERED that:**

1.    The Courts **GRANTS** in part and **DENIES** in part Jacobsen Outdoor's motion for partial summary judgment. (Dkt. 34). Specifically, it grants summary judgment for Jacobsen Outdoor on RMHC's liability for Counts I through IV. Further, it grants Jacobsen Outdoor

summary judgment on all RMHC's affirmative defenses, except for RMHC's permissive use defense.

2.      The Court **DENIES** RMHC's motion for summary judgment. (Dkt. 35).

3.      The Court **DENIES** Jacobsen Outdoor's motion to strike. (Dkt. 40).

4.      The Court **DENIES** Jacobsen Outdoor's motion to expedite its motion to strike as **MOOT**. (Dkt. 41).

5.      The Court **DENIES** RMHC's motion for leave to file an additional overlength factual statement. (Dkt. 43).

DATED: January 24, 2025

Amanda K. Brailsford
U.S. District Court Judge